FILED-HARRISONBURG, VA
U.S. BANKRUPTCY COURT

AUG - 1 2011

By _____
DEPUTY CLERK

# UNITED STATES BANKRUPTCY COURT
## WESTERN DISTRICT OF VIRGINIA
### HARRISONBURG DIVISION

In Re:

**RUSSELL LEE EBERSOLE,**        **Case No. 09-51561-RWK**
       **Debtor**           **(Chapter 11)**

## AMENDED DISCLOSURE STATEMENT

I.              **INTRODUCTION**

Russell Ebersole, (hereinafter "Ebersole") provides this Amended Disclosure Statement to all of his known creditors in order to disclose that information deemed by the Debtor to be material, important and necessary for his creditors to arrive at a reasonable informed decision in exercising their right to vote for acceptance of a plan of reorganization (hereinafter the "Plan") in the Debtor's pending Chapter 11 Proceeding. A copy of the Plan accompanies this statement.

Ebersole filed his petition for relief pursuant to Chapter 13 of the Bankruptcy Code on September 29, 2009. Upon the Debtor's Motion, this case was converted to a case pursuant to Chapter 11 by order entered on January 14, 2010.  The Debtor remains in possession of his assets.  Pursuant to §1125 of the Bankruptcy Code, the Debtor has obtained an Order of this Court entered _____ _____, 2011 approving this Disclosure Statement (hereinafter the "Statement") for submission to the holders of claims against the Debtor. Bankruptcy court approval of the disclosure statement is not a decision by the court on the merits of the Plan.

The Court will set a hearing on acceptance of the Plan.  Creditors may vote on the Plan, or/and may attend such hearing.  As a creditor, your acceptance is important.  To vote on the Plan, your Ballot should be returned on or before the ___ day of _____,

RECEIPT ACKNOWLEDGED

2011 to Debtor at the following address: Russell L. Ebersole, 667 Walters Mill Lane,

Stephenson, Virginia 22656, who shall file a summary along with the ballots at the

United States Bankruptcy Court, 116 North Main Street, Room 223, Harrisonburg,

Virginia 22802 with a copy to the U.S. Trustee, 210 First Street, Suite 505, Roanoke,

Virginia 24011. The proposed Plan can be confirmed by the court if it is accepted by the

holders of two-thirds (2/3) in amount and more than one-half (1/2) in number of claims in

each impaired class of claims voting on the Plan. In the event that requisite acceptances

are not obtained, the court may, nevertheless, confirm the Plan if the Court finds that it

accords fair and equitable treatment to the class or classes rejecting it.

NO REPRESENTATION CONCERNING THE DEBTOR (PARTICULARLY
AS THE VALUE OF ITS ASSETS) IS AUTHORIZED BY THE DEBTOR OTHER
THAN AS SET FORTH IN THIS DISCLOSURE STATEMENT. ANY
REPRESENTATION OR INDUCEMENTS MADE TO SECURE YOUR
ACCEPTANCE WHICH ARE OTHER THAN AS CONTAINED IN THIS
STATEMENT SHOULD NOT BE RELIED UPON BY YOU IN ARRIVING AT
YOUR DECISION, AND SUCH ADDITIONAL REPRESENTATIONS AND
INDUCEMENTS SHOULD BE FORWARDED TO COUNSEL FOR THE DEBTOR,
WHO IN TURN SHALL DELIVER SUCH INFORMATION TO THE BANKRUPTCY
COURT FOR SUCH ACTION AS MAY BE DEEMED APPROPRIATE.

Although the Debtor believes the information contained herein to be accurate, due

to the uncertainties of the evaluation of assets, or the stability of future income, the

Debtor is unable to warrant or represent that the information contained herein is

completely accurate.

## II.    BACKGROUND AND FINANCIAL HISTORY OF DEBTOR

This case arises out of the efforts of the Debtor to preserve his residence and business premises located at 667 Walters Mill Lane, Stephenson, Virginia 22656. The Debtor operates a facility known as "Aberdeen Acres" which provides boarding, training and grooming services for domestic pets. The debtor was absent from the business from June, 2003 through October, 2008 during which time the facility was operated by the Debtor's now ex-wife.

## III.    DISCUSSION OF FINANCIAL DIFFICULTIES

In order for creditors to understand the financial difficulties leading to filing for relief under Chapter 11, Debtor herein provides the following additional details. Debtors problems stem from three sources: 1) an alleged late payment on a mortgage note to one of the Debtors creditors, Brown Bark I, L.P. (hereafter "Brown Bark"), 2) employee withholding tax embezzlement and identify theft by Debtor's now ex-wife, Karen L. Ebersole (hereafter "K. Ebersole") where she used Debtor's Employee Identification Number (hereafter "EIN") to file Form 941s with the Internal Revenue Service (hereafter, "IRS") while absconding with the employee payroll taxes she withheld from Aberdeen Acres employees, and 3) Debtor's ex-wife's breach of her obligations under an Amended Judgment of Absolute Divorce Order issued by the Circuit Court in Washington County, Maryland which required K. Ebersole to pay a credit card debt to HSBC, Inc. arising from her inappropriate use of a credit card held by the Debtor.

In regard to the alleged late mortgage payment, Debtor offers the following explanation of events for the benefit of his Creditors. On December 17, 2002, Debtor executed a Promissory Note (hereafter "Note") with Bank of America, N.A. (hereafter

"Bank of America") in the amount of $539,000 to re-finance his Aberdeen Acres Pet Care Center business. Bank of America had held a prior Note for the property at a much higher rate of interest. The purpose of securing the new Note was to take advantage of falling interest rates, thus reducing the mortgage payment on the Aberdeen Acres property from approximately $9,500.00 per month to $6,572.79 per month. According to the terms of the Note, the laws and rules of the State of Maryland governed the agreement between the parties. Debtor continued to make this monthly payment from January 2003 through January 2009. In 2004, Bank of America packaged the Note along with many others and sold it on the secondary market. On April 6, 2004, Bank of America sold the Note to NC-WC, L.P., (hereafter "NC-WC" or "Brown Bark"), at a discount in order to shore up its finances. The original terms of the Note negotiated with Bank of America, calls for the $6,572.79 payment to be made on the 17th day of each month (hereafter the "due date") and allows for a 15 day grace period before the payment is late. This window of time allows for mailing and processing, banking holidays, etc. After the 15 day grace period the lender is allowed to assess a late fee equal to 4% of the outstanding monthly payment. Between January 2003 and January 2009, Debtor made approximately 80 mortgage payments between the due date and the late date, establishing a normal course of dealings between the lender Bank of America, N.A. and its subsequent assign, NC-WC, L.P., in accordance with the terms and provisions of the Note. Due to an alleged late payment, in January 2009, NC-WC declared the note in default and initiated foreclosure proceedings against the Aberdeen Acres property. The Debtor and Brown Bark have, subsequent to the initiation of these Bankruptcy proceedings, reached an agreement which is incorporated into the disclosure statement and reorganization plan. Debtor is current in his payments under the revised agreement

4

and the agreement was approved by the Debtor and Brown Bark and signed by the Federal Bankruptcy Court on February 17, 2011. Its terms are set forth below. In accordance with the Court's order, on November 29, 2010, the Debtor provided a payment in the amount of $70,000 to Brown Bark and has resumed making normal monthly mortgage payments as required by the revised agreement and the Bankruptcy Court's Order. Debtor perceives no issues or problems that would preclude him from continuing to fulfill his monthly mortgage payments until the note is paid in full.

The second of the Debtors financial difficulties arises from the embezzlement of employee withholding taxes by K. Ebersole, the Debtor's ex-wife, while she ran the Aberdeen Acres business between 2007 and November 17, 2008. During this time K. Ebersole, who is a highly qualified Human Resources Manager for a large corporation with extensive knowledge of payroll function and other human resource issues, performed the bi-weekly payroll function for Aberdeen Acres Pet Care Center. In this capacity, she received employee time cards, calculated gross pay, calculated employee withholding taxes using a Quickbooks accounting system located in the State of Maryland, withheld the taxes in a checking account that she controlled, completed and signed IRS Forms 940 and 941 for all pay periods between 2007 and November 2008 and forwarded these forms to the IRS while at the same time failing to forward the collected employee withholding taxes to the IRS as required by law. Even though Debtor pursued exhaustive discovery on K. Ebersole during their divorce process, she withheld and concealed all records and evidence of her embezzlement of these funds and repeatedly represented to the State Court in Maryland via her pleadings responding to Debtors motions to compel discovery that, "were are no more business records," for the Aberdeen Acres business. Beginning in February 2009, Debtor received numerous levy notices

against his assets from the IRS. At this point in time he first became aware that K. Ebersole had used his EIN to file IRS 940 and 941 thus placing the liability for payment on the Debtor. Acting on advice of the IRS, Debtor immediately filed police reports with the Frederick County, Virginia and Washington County, Maryland Sheriff's Departments and identity theft affidavits with the United States Department of Commerce. Both jurisdictions declined to prosecute stating that it was a federal matter, that they lacked jurisdiction, and directed the Debtor to the Winchester Office of the Federal Bureau of Investigations. The FBI refused to get involved stating that the case was to small and that the U.S. Attorney's office would only prosecute cases above $70,000.  As requested by the IRS, all of this information was forwarded to the IRS in Philadelphia, PA, Ben-Salem, PA and Andover, MA in 2010. Finally on July 19, 2011 the Internal Revenue Service, through its counsel, The United States Justice Department, Tax Division, informed the Debtor that he was absolved of any responsibility for the embezzled withholding, Social Security, and Medicare taxes. The IRS has filed its Amendment No. 3 to Proof of Claim 1-2 dated October 15, 2009 relieving the Debtor of any claim. As such the Internal Revenue Service is no longer a creditor in Debtor's bankruptcy proceedings.

Debtor has filed an adverse proceeding in the Bankruptcy Court attempting to recover damages from the egregious acts of K. Ebersole relative to the embezzled federal taxes.


The third of the Debtors financial difficulties arises from the failure of Debtor's ex-wife, K. Ebersole, to make payment on a certain HSBC credit card held by the Debtor during the term of their marriage. K. Ebersole, in support of an overly lavish lifestyle, used the HSBC credit card belonging to the Debtor, massing approximately $5000.00 in debt. As part of the divorce settlement between the parties, K. Ebersole agreed to

continue making payments on the credit card until it was paid off. K. Ebersole made payments from November 2008 until September 2009 at which time, unbeknownst to the Debtor, she ceased making the required payments, throwing this debt into default. HSBC sold this obligation to PRA Receivables Management of Norfolk, Virginia who was a claimant in these proceedings. Debtor filed his objections to the PRA's claim setting forth the facts listed above. The Bankruptcy Court commanded PRA to respond within 30 days to validate its claim. PRA failed to respond and thus Debtor filed an Order for Default Judgment dismissing PRA's claim with prejudice. On March 4, 2011, the court sustained Debtor's objection to the claim of PRA Receivables. The very next day K. Ebersole, through her counsel, Richard C. Maxwell, did transmit a check to PRA paying off the obligation in full pursuant to the State Court's Amended Judgment Order granting absolute divorce and PRA withdrew its Claim, Claim No. 4. This claim has been resolved in favor of the Debtor and no further action is contemplated and the matter rectified.

The final issue involves a claim, Claim No. 2-2 by Debtor's ex-wife for domestic support and this claim has also been paid in full and resolved in favor of the Debtor and no further action is contemplated and the matter rectified.

As is apparent from the information presented above, the only real issue giving rise to the need to file for protection under Chapter 11 was to protect the Aberdeen Acres Pet Care Center asset from foreclosure by Brown Bark I, L.P. Debtor has resumed making payments to Brown Bark via monthly electronic wire transfer. .

Other than the issues addressed above, Debtor has faced no other financial difficulties and is current on all other financial obligations.

IV.                    **FINANCIAL STATEMENTS**

Debtor includes herein; (1) Profit and Loss Statements for both fiscal year 2010 and year to date 2011, (2) Prior Six Month Cash Flow Statements, and (3) Balance Sheets showing assets and liabilities on the date of commencement of the Chapter 11 proceedings and the Balance Sheet as of December 2010 as requested by the United States Trustee.

# ABERDEEN ACRES PET CARE CENTER
## Profit & Loss
### January 1 through July 24, 2011

5:49 PM

07/24/11

Accrual Basis

|  | Jan 1 - Jul 24, 11 |
|---|---|
| **Ordinary Income/Expense** | |
| **Income** | |
| Checks/cash payments (United) | 56,859.78 |
| **Total Income** | 56,859.78 |
| **Gross Profit** | 56,859.78 |
| **Expense** | |
| Advertising and Promotion | 10,422.63 |
| Automobile Expense | 58.78 |
| Bank Service Charges | 5,395.99 |
| Casual Labor | 44,067.75 |
| Ch 11 qrtly fee | 3,575.00 |
| Computer and Internet Expenses | 135.00 |
| Dog procurement | 1,010.00 |
| Dues and Subscriptions | 227.00 |
| Equipment purchase | 605.50 |
| Gifts | 159.91 |
| good customer credit | -50.00 |
| **Insurance Expense** | |
| Auto Insurance | 541.00 |
| General Liability Insurance | 5,768.22 |
| Health Insurance | 3,348.66 |
| Worker's Compensation | 797.00 |
| **Total Insurance Expense** | 10,454.88 |
| Janitorial Expense | 685.38 |
| Kennel Supplies | 9,948.78 |
| Manufacturing supplies | 1,095.88 |
| Meals and Entertainment | 523.85 |
| Miscellaneous Expense | -136.97 |
| Mortgage | 46,145.58 |
| Office Supplies | 1,921.69 |
| Payroll Expenses | 31,477.50 |
| Postage and Delivery | 313.91 |
| Printing and Reproduction | 404.30 |
| **Professional Fees** | |
| Accounting | 3,378.69 |
| Professional Fees - Other | 849.11 |
| **Total Professional Fees** | 4,227.80 |
| **Refunds** | |
| reimbursement | 2,000.00 |
| Refunds - Other | -105.16 |
| **Total Refunds** | 1,894.84 |
| Repairs and Maintenance | 8,202.72 |
| **Taxes- Payroll** | |
| Penalties/Interest | 461.51 |
| Taxes- Payroll - Other | 2,775.41 |
| **Total Taxes- Payroll** | 3,236.92 |
| taxes- unemployment | 1,287.73 |
| Taxes - Property | 2,481.94 |
| Telephone Expense | 2,103.49 |
| Training supplies | 5,963.45 |
| Travel Expense | 4,166.13 |
| TY/Gifts | 100.00 |
| Utilities | 13,313.75 |
| Veterinarian Expenses | 8,507.06 |
| **Total Expense** | 223,928.17 |
| **Net Ordinary Income** | -167,068.39 |

# Aberdeen Acres Pet Care Center
## Prior Six Months Cash Flow

| Month | Jan-11 | Feb-11 | Mar-11 | Apr-11 | May-11 | June-11 |
|---|---|---|---|---|---|---|
| Beginning Cash | $17,829.09 | $19,176.17 | $12,757.68 | $22,745.02 | $21,293.81 | $25,649.38 |
| Cash Sales | $35,141.70 | $22,738.25 | $31,536.70 | $31,135.83 | $34,770.85 | $36,838.65 |
| | | | | | | |
| **Total Cash** | $52,970.79 | $41,914.42 | $44,294.38 | $53,880.85 | $56,064.66 | $62,488.03 |
| | | | | | | |
| **Expenses** | | | | | | |
| | | | | | | |
| Mortgage Payment | $6,600.00 | $6,600 | $6,600 | $6,600 | $6,600 | $6,600 |
| Advertising & Promotion | $1663.80 | $1,854.95 | $993.70 | $942.55 | $1,413.60 | $1,619.28 |
| Automobile Expenses | $58.78 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Bank Service Charges | $2.50 | $653.43 | $513.07 | $1,435.25 | $768.70 | $1,134.92 |
| Casual Labor | $4,746.75 | $4,342.5 | $5,578.75 | $7,213.00 | $5,243.25 | $6,355.00 |
| Ch 11 qrtly fee | $1,625.00 | $0.00 | $0.00 | $975.00 | $0.00 | $0.00 |
| Dog Procurement | $600.00 | $410.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Dues & Subscriptions | $78.00 | | $149.00 | $0.00 | $0.00 | $0.00 |
| Equipment Purchase | $111.30 | $111.30 | $111.30 | 160.3 | $111.30 | $0.00 |
| Insurance Expenses | $2,488.38 | $1,104.75 | $1,104.75 | $1,104.75 | $2,442.75 | $1,104.75 |
| Janitorial Expense | $109.45 | $109.98 | $110.66 | $0.00 | $113.68 | $114.51 |
| Kennel Supplies | $721.71 | $2,305.76 | $332.21 | $493.01 | $2,674.42 | $2,406.57 |
| Manufacturing Supplies | $0.00 | $0.00 | $0.00 | $1,095.88 | $0.00 | $0.00 |
| Meals & Entertainment | $39.99 | $349.86 | $0.00 | $50.00 | $36.00 | $0.00 |
| Misc. Expense | $40.00 | $0.00 | $0.00 | $1,366.79 | ($74.00) | $47.03 |
| Office Supplies | $638.47 | $1.05 | $0.00 | $52.99 | | $523.95 |
| Payroll Expense | $4,411.52 | $2,781.29 | $3,115.58 | $5,175.05 | $4,746.69 | $5,182.61 |
| Postage & Delivery | $66.00 | $84.90 | $0.00 | $0.00 | $132.00 | $31.01 |
| Printing & Reproduction | $0.00 | $355.04 | $49.26 | $0.00 | $0.00 | $0.00 |
| Professional Fees | $1,432.11 | $885.00 | $438.74 | $1,084.79 | $321.79 | $43.58 |
| Repairs & Maintenance | $2,575.69 | $1,207.41 | $278.00 | $494.00 | $1,219.48 | $1,980.61 |
| Taxes - Payroll | $1,488.53 | $461.51 | $0.00 | $1.286.88 | $0.00 | $0.00 |
| Taxes - unemployment | $652.19 | $0.00 | $0.00 | $635.54 | $0.00 | $0.00 |
| Telephone Expense | $276.88 | $306.27 | $229.15 | $704.48 | $327.87 | $0.00 |
| Training Supplies | $0.00 | $1,216.78 | $600.00 | $0.00 | $0.00 | $423.67 |
| Travel Expenses | $1,283.27 | $371.34 | $268.87 | $660.75 | $503.57 | $732.76 |
| TY/Gifts | $100.00 | $104.91 | $55.00 | $0.00 | $0.00 | $0.00 |

| | | | | | |
|---|---|---|---|---|---|
| Utilities | $2011.51 | $2,212.94 | $936.32 | $1.056.03 | $1,026.42 | $2,532.95 |
| Reimbursements | $66.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Auto Insurance | $0.00 | $0.00 | | $0.00 | $0.00 | $0.00 |
| Computer/Internet Expenses | $0.00 | $50.00 | $85.00 | $0.00 | $0.00 | $0.00 |
| Property Taxes | $0.00 | $1,302.98 | $0.00 | $0.00 | $1,178.96 | $0.00 |
| Payroll Taxes | $0.00 | $0.00 | $0.00 | $0.00 | | $0.00 |
| Veterinary Expenses | $0.00 | $0.00 | $0.00 | $0.00 | $1,628.80 | $0.00 |
| | | | | | | |
| **Total Expenses:** | $33,794.62 | $29,156.74 | $21,549.36 | $32,587.04 | $30,415.28 | $30,813.20 |
| | | | | | | |
| **Ending Cash:** | $19,176.17 | $12,757.68 | $22,745.02 | $21,293.81 | $25,649.38 | $31,674.83 |

### Aberdeen Acres Pet Care Center
### Commencement of Case Balance Sheet
### January 14, 2010

|  | Jan 14, 10 |
|---|---|
| **ASSETS** | |
| **Current Assets** | |
| **Checking/Savings** | |
| M&TBank | 43,249.25 |
| **Total Checking/Savings** | 43,249.25 |
| **Total Current Assets** | 43,249.25 |
| **TOTAL ASSETS** | 43,249.25 |
| **LIABILITIES & EQUITY** | |
| **Equity** | |
| Opening Balance Equity | 47,225.10 |
| Owners Draw | -1,800.00 |
| Owners Equity | -5,585.76 |
| Net Income | 3,409.91 |
| **Total Equity** | 43,249.25 |
| **TOTAL LIABILITIES & EQUITY** | 43,249.25 |

### Aberdeen Acres Pet Care Center
### Current Balance Sheet
### January 14, 2011

|  | Jan 16, 11 |
|---|---|
| **ASSETS** | |
| **Current Assets** | |
| **Checking/Savings** | |
| M&TBank | 4,398.23 |
| **Total Checking/Savings** | 4,398.23 |
| **Total Current Assets** | 4,398.23 |
| **Other Assets** | |
| TRANSFER TO TRUSTEE | 275,000.00 |
| **Total Other Assets** | 275,000.00 |
| **TOTAL ASSETS** | 279,398.23 |
| **LIABILITIES & EQUITY** | |
| **Equity** | |
| Opening Balance Equity | 47,225.10 |
| Owners Draw | -2,300.00 |
| Owners Equity | 220,706.33 |
| Net Income | 13,766.80 |
| **Total Equity** | 279,398.23 |
| **TOTAL LIABILITIES & EQUITY** | 279,398.23 |

V.                              **MATERIAL POST PETITION EVENTS**

There are no material post petition events worthy of reporting. Debtor has paid off
his mortgage obligation to P.A. Ebersole for the property located at 10138 Garis Shop
Road, Hagerstown, Maryland. He has accelerated his mortgage payment to P.A. Ebersole
for his rental property located at 137 Devonshire, Maryland in an effort to expeditiously
pay off this obligation, is current and has made all required monthly payments. Debtor is
current on his monthly child support obligations and his restitution obligations to the
United States stemming from his criminal conviction. Post Petition Debtor has resolved
Claim 1-2 with the Internal Revenue Service, Claim 2-2 with his ex-wife and Claim 4
with PRA Receivables Management. Normal mortgage payments, including additional
contributions to principal have resumed pursuant to the court's November 10, 2010
Order. Brown Bark has received approximately $123,000 in payments since November
10, 2010 in accordance with the terms and conditions of the mortgage agreement and stay
of foreclosure on the Aberdeen Acres property remains in effect conditioned by Debtor's
ability to make the required monthly payments.


VI.                             **OUTLINE OF THE PLAN**


During the divorce proceeding between the Debtor and his ex-wife on October 29,
2008, the Maryland state Circuit Court ordered all assets of the Aberdeen Acres business
to be transferred to the Debtor. Debtor's ex-wife maintained a business checking account
at Edward Jones for, among other things, paying monthly bills associated with the
operation of the Aberdeen Acres business. As a result of the domestic order, Edward
Jones, who maintained the Aberdeen Acres checking account from which mortgage

13

payments had been electronically transferred to the mortgage company, unilaterally and without Debtor's knowledge, placed a restriction on the account, prohibiting any money from being paid out or transferred from the account. As a result of the restriction placed by the financial institution, a mortgage payment, which had been transferred and paid to the mortgage holder, NC-WC, LLP was retracted from their account and the mortgage holder accelerated the mortgage note and attempted to foreclose on the property. Your Debtor filed his petition to address this claim, rectify the mortgage and preserve the asset.

Aberdeen Acres is the Debtor's primary source of income. The business has been growing since the Debtor has assumed control of the business in November, 2008. The business operates at a modest but respectable profitability. The Schedule C filed by the Debtor for the business for 2009 reflects Gross Receipts of $206,944.00 and expenses of $170,771.00 resulting in a profit for 2009 of $36,173.00. The Debtor's Schedule Cs for Aberdeen Acres for the three prior tax years reflect the following information:

|  | 2008 | 2009 | 2010 |
|---|---|---|---|
| Gross Receipts: | 150,834.00 | 206,944.00 | 340,586.00 |
| Deductions from Income (Business Expenses) | 157,933.00 | 170,771.00 | 373,653.00 |
| Net Profit or (Loss): | (7,099.00) | 36,173.00 | ($33,748.00)[1] |

Since the conversion of the petition to Chapter 11, the Debtor has filed his monthly reports. The reports reflect the following profits and losses:

---

[1] Includes one- time $71,528.00 interest expenses to Brown Bark I, L.P. and Depreciation Expenses of $33,021.

| Source of Income | Month and Year | Profit/Loss |
|---|---|---|
| Aberdeen Acres | February, 2010 | ($8,894.85) |
| Aberdeen Acres | March 2010 | $13,698.69[2] |
| Aberdeen Acres | April 2010 | $18,748.62 |
| Aberdeen Acres | May 2010 | ($1,831.66) |
| Aberdeen Acres | June 2010 | ($10,496.41) |
| Aberdeen Acres | July 2010 | $38,751.65 |
| Aberdeen Acres | August 2010 | ($   152.56) |
| Aberdeen Acres | September 2010 | $12.325.17 |
| Aberdeen Acres | October 2010 | ($3,510.26) |
| Aberdeen Acres | November 2010 | ($2,615.01) |
| Aberdeen Acres | December 2010 | ($54,806.18)[3] |
| Aberdeen Acres | January 2011 | $3,110.12 |
| Aberdeen Acres | February 2011 | $1,347.08 |
| Aberdeen Acres | March 2011 | ($7,018.49) |
| Aberdeen Acres | April 2011 | $9,987.34 |
| Aberdeen Acres | May 2011 | ($2,229.03) |
| Aberdeen Acres | June 2011 | $3,577.75 |

---

[2] Includes reimbursement to Aberdeen Acres for funds drawn from Aberdeen Acres checking account to pay for repairs to kennels damaged by ice and snow storms (see Page 4 of the March 2010 monthly report).
[3] Pursuant to the Court's November 10, 2010 Decision and Order, an adequate protection payment in the amount of $70,000 was dispersed to Brown Bark I, L.P.. If this payment was excluded, Aberdeen would have shown a cash profit of $15,193.82

VII.          **BRIEF DESCRIPTION OF PLAN**

THE PLAN OF REORGANIZATION IS A LEGALLY BINDING ARRANGEMENT AND SHOULD BE READ IN ITS ENTIRETY AS OPPOSED TO RELYING ON THE SUMMARY.

The essential components of the Plan are that the creditors of the Debtor will be paid in full, on terms described below. The value of the Debtor's assets at the time of the filing of his petition was estimated to be approximately $1,846,445.70. The primary assets were the following parcels of real estate:

(1) Aberdeen Acres, 667 Walters Mill Lane, Stephenson, Virginia 22656, the business premises of Aberdeen Acres and also the Debtor's primary residence. The Debtor's estimation of the property's value is $1,200,000.00 based upon an appraisal conducted in 2003 for Bank of America, the original mortgage holder and appraised again in 2003 at $1,100,000.00 for re-financing purposes. This property is subject to the lien asserted by Brown Bark I, LP in the amount of $295,011.37 and a restitution lien to the U.S. Government in the amount of $708,000.00.

(2) An investment property located at 137 Devonshire Road, Hagerstown, Maryland 21740 valued at $179,000.00 based upon an appraisal conducted during the Debtor's divorce proceedings and comparable neighborhood sales, subject to a lien to the Debtor's mother, Pauline Ebersole, in the amount of $78,500.00.

(3) The Debtor is listed on the deed of the former marital residence located at 10138 Garis Shop Road, Hagerstown, Maryland 21740 and shall remain as such until all pending litigation in the state court and all adverse proceedings filed in the Federal Bankruptcy Court has been resolved.

The Debtor valued personal property including financial accounts and vehicles as of the date of the Chapter 13 petition as $117,445.70.

The Debtor proposes to classify claims into five (5) groups: 1) administrative claims, 2) tax claims, 3) secured claims, 4) unsecured priority claims and 5) unsecured claims without priority.

**Class I: Administrative Claims:** Administrative claims are to be paid within ninety (90) days after the effective date of the Plan or approval by the Court. Administrative Claims include professional fees in assisting Debtor during the bankruptcy proceedings. As Debtor proceeded Pro Se, there are no administrative claims arising from attorney's fees in this matter. Debtor shall continue to pay U.S. Trustee fees until the case is converted, dismissed or closed. U.S. Trustee post-confirmation quarterly fees have been and will continue to be timely paid as required by law. This class is not impaired.

**Class II:  Tax Claims:** Any approved tax claims shall be paid in full with interest as provided by law within twenty-four (24) months after the effective date of the Plan. These claims include any claims by any governmental taxing authority, federal, state or municipality, for sales, use, withholding or income tax. The only claims filed within this category are by the Internal Revenue Service totaling Twenty-three Thousand, Nine Hundred Forty-one and 90/100ths Dollars. The IRS amended its proof of claim on July 19, 2011 indicating that the total amount of unsecured priority claims in this case was $0.00 resolving the Debtor's Objection to this claim in his favor and this court signed the agreed upon order resolving this matter on July 7,2011 (docket #270). This class is not impaired.

**Class III:**      **Secured Claims:** The Secured claims by Brown Bark I, LLP and Pauline A. Ebersole shall become the sole responsibility of the Debtor. The Brown Bark secured claim shall be paid in accordance with the following agreement reached by the parties. By their respective endorsements of the Court's February 17, 2011 Order, Brown Bark and the Debtor stipulate and have agreed as follows:

1. The principal balance due under the Note dated December 17, 2002 made by the Debtor and held by Brown Bark, is restated to be the sum of $270,000.00 as of January 18, 2011.

2. Brown Bark's claim in the principal amount of $270,000.00 as of January 18, 2011 is deemed to be allowed, secured claim in this case.

3. Brown Bark's allowed, secured claim shall be amortized from January 18, 2011 at an interest rate of 11% per annum, and shall be paid by the Debtor to Brown Bark in minimum monthly payments of $6,600.00 until paid in full.

4. All unpaid interest, late charges, attorney's fees and costs incurred through January 18, 2011 that are not included in the restated principal are waived by Brown Bark, and all Events of Default occurring on or before January 18, 2011 are deemed to have been cured.

5. Except as expressly modified in the preceding paragraphs, all of the terms, provisions, conditions and covenants of the said Note and related documents are hereby incorporated in the parties' stipulations by this reference thereto, and the covenants and obligations of the Debtor with respect to the Note and related documents, including his responsibility as the sole guarantor of the note therein, and as recited shall apply to those said indebtedness and related obligations from and after January 18, 2011.

18

6. Except as set forth in the stipulations above, the Note and related documents shall remain unaffected and unchanged and unimpaired by reason of these stipulations. Based upon the findings of fact and conclusions of law previously made by the Court in its Decision and Order entered November 10, 2010 (Docket # 90), and based upon the foregoing stipulations, the Court ordered on February 17, 2011 that; (1) Debtor shall timely deliver or cause to be delivered to Brown Bark on or before the 17th day of each month the payments described above in the total amount of $6,600.00 per month, in collected funds. Debtor has continued to comply with this requirement of the order and is current on all payments to Brown Bark. As part of the agreement with Brown Bark, Debtor shall comply with all requirements of (a) the Decision and Order entered November 10, 2010 (Docket # 90), (b) the November 10, 2010 Order, and (c) his confirmed Chapter 11 plan. (3) Subject to the provisions of the parties' stipulations and this order, the automatic stay of 11 U.S.C. § 362 is modified and conditioned according to the terms of this order. (4) In the event that a) Debtor fails to comply with the terms of this order, or b) Debtor fails to timely deliver, or cause to be delivered, any payment on or before the date required by this order or the plan, then in any such event, Brown Bark may give written notice of such default to the Court, Debtor's counsel, Debtor, and Trustee. After such notice has been given: (A) If Debtor fails to object in writing within 15 days of the date such notice is sent and to request a hearing thereon, then in such event Movant is RELIEVED from the automatic stay provisions of 11 U.S.C. §362, such stay is RESCINDED without further order, notice or opportunity for hearing, and

Brown Bark is entitled to avail itself of its contractual remedies. In such event, (1) the Trustee will stop making payments on the creditor's secured claim 30 days after the response period has ended, and (2) any amended unsecured claim for a deficiency must be filed within 120 days of the end of the response period, or such claim shall be forever barred. Any such amended unsecured claim will also provide for a breakdown of the accounting for which the claim is filed.   (B) If the matter is contested by the Debtor, the Trustee will continue making payments on the creditor's secured claim until and unless an order modifying or terminating the automatic stay is entered by the Court. (C) If the Debtor cures the default, if the notice of default is withdrawn by Brown Bark, or if any other agreement is reached between Brown Bark and the Debtor that allows the Debtor to retain the Property, Brown Bark shall so notify the Trustee in writing within twenty days, and the Trustee shall continue making payments on the secured claim of Brown Bark pursuant to the plan. (D) Notwithstanding the foregoing, upon the  filing of the third notice of default hereunder, Brown Bark shall  be relieved from the automatic stay without further opportunity for hearing. It is further ordered that the Debtor shall forthwith  file an amended Disclosure Statement and proposed plan of reorganization incorporating the terms of the parties' stipulations and agreements. As a result of the parties' agreed upon order, Brown Bark is not impaired.

The Debtor's mother whoes claim is deemed to be both allowed and secured as a result of her position of first deed of trust on the Devonshire property, has been, and shall

continue to be, paid in accordance with the terms of the governing documents, and is not impaired. The United States has been and shall continue to be paid in accordance with the Amended Judgment Order entered by the honorable Federal District Court Judge Leonie M. Brinkema on September 1, 2005, case number 1:03CR00112-001. The claim of Karen Beckworth has been paid in the amount of $821.00, this debt has been satisfied. The Clerk of Courts for Frederick County, Virginia as part of this plan shall release the lien within thirty days of confirmation of this plan. This class is not impaired.

**Class IV: Unsecured Priority Claims**: The only unsecured priority claim that is not treated as a tax claim pursuant to Class II is the domestic support claim (Claim 2-2) filed by Karen Ebersole. This support claim has been paid in full in accordance with the order of support entered in the divorce case on January 5, 2010 (case number 21-C-07-27568DA). All arrearage has been satisfied. Thus, there are no unsecured priority claims remaining in this matter, Karen Ebersole's claim has been satisfied, and this matter is resolved. This class is not impaired.

**Class V: Unsecured Claims:** Upon conclusion of the divorce trial, on October 29, 2008, and by an Amended Judgment Order of Absolute Divorce entered by the Washington County Maryland State Circuit Court on April 9, 2009, all debt associated with the claim of PRA Receivables Management, LLC (Claim No. 4) were ordered to be paid by Debtor's ex-wife, Karen L. Ebersole. This matter has been resolved first by this Court's March 4, 2011 Order sustaining the Debtor's objection to the claim and second by the fact that immediately after this Court sustained the Debtor's objection, Karen L. Ebersole, through her counsel, did dispatch a check to PRA Receivables paying the claim

in full. PRA Receivables has withdrawn its claim, thus there are no unsecured claims without priority remaining in this matter. This class is not impaired.

The following table outlines each Creditor, when payments are due, the timing of the payments, the date the payments begin, or begun if already being paid, and the anticipated pay off date of the obligation.

| Creditor Name | Creditor Class | Balance as of 07/26/2011 | Monthly Payment & Date | Payment Start Date | Payoff Date |
|---|---|---|---|---|---|
| Legal or Professional Fees | **Class I**, Administrative | $0.00 | $0.00 | N/A | N/A |
| U.S. Trustee Fees | **Class I**, Administrative | $0.00 | $300.00 | March 2010 | Upon closure, dismissal or conversion |
| Internal Revenue Service | **Class II**, Tax Claims | $0.00 | $0.00 | N/A | N/A |
| Pauline Ebersole | **Class III**, Secured | $61,45.26 | $777.82 | August 25, 2010 | August 25, 2020 |
| Pauline Ebersole | **Class III**, Secured | $278,000.00 | $0.00 Paid in Full | August 1995 | August 15, 2010 |
| Brown Bark I, L.P. | **Class III**, Secured | $270,000.00 | $6,600.00 | January 2003 | May 17, 2014 |
| United States | **Class III**, Secured | $698,000 | $400.00 | January 2009 | Pursuant to September 2005 Amended Judgment Order |
| Karen L. Ebersole | **Class III**, Unsecured Priority | $2,178.00 | $0.00 Paid in Full | September 1, 2009 | July 29. 2011 |

| PRA Receivables Management | **Class IV**, Unsecured | $0.00 | $0.00 | N/A | N/A |
| | | | | | |

VIII.        **MEANS OF EFFECTUATING THE PLAN**

The payments described above will be made by the Debtor pursuant to the schedule set forth in the table above with the first payment, if they have not commenced already, being due upon the later of thirty days after the effective date of the Plan of the date a claim is determined to be valid.

Debtor shall file any objections to any outstanding claims within 30 days of the effective date of the Plan. The Creditors will also timely make all other actions required of them to be performed to effect the implementation and successful consumation of the Plan. The following table provides the source of funds to pay off Creditors and how they will be applied.

| **Creditor Name** | **Creditor Class** | **Balance as of 07/26/2011** | **Monthly Payment & Date** | **Source of Funds** | **Application of Funds** |
|---|---|---|---|---|---|
| | | | | | |
| Legal or Professional Fees | **Class I**, Administrative | $0.00 | $0.00 | N/A | N/A |
| U.S. Trustee Fees | **Class I**, Administrative | $0.00 | $300.00 ten days after receipt of quarterly invoice from the U.S. Trustee | Aberdeen Acres Gross Receipts | Payment in full within ten days of receipt of Invoice paid from Aberdeen Acres Checking Account |
| | | | | | |
| Internal Revenue Service | **Class II**, Tax Claims | $0.00 | $0.00 | N/A | N/A |

| | | | | | |
|---|---|---|---|---|---|
| Pauline Ebersole | **Class III**, Secured | $61,45.26 | $777.82 | Monthly Rental Income receipts from Devonshire Property | Monthly check in the amount of $777.82 from the checking account of Russell L. Ebersole payable to Pauline A. Ebersole |
| Pauline Ebersole | **Class III**, Secured | $278,000.00 | $0.00 Paid in Full | | |
| Brown Bark I, L.P. | **Class III**, Secured | $240,340.26 | $6,600.00 | Monthly gross receipts from the Operation of Aberdeen Acres Pet Care Center | Electronic Bill Pay/Electronic Wire Transfer before the 17th of each month to the account of Brown Bark I, L.P. |
| United States | **Class III**, Secured | $698,000 | $400.00 | Salary of Russell L. Ebersole | Monthly check in the amount of $400.00 from the checking account of Russell L. Ebersole payable to the Clerk of Courts for the Eastern District of Virginia |
| Karen L. Ebersole | **Class III**, Unsecured Priority | $0.00 | $0.00 | N/A | N/A |
| PRA Receivables Management | **Class IV**, Unsecured | $0.00 | $0.00 | N/A | N/A |

24

IX.              **INCOME AND EXPENSE PROJECTIONS**

In order that creditors can evaluate the feasibility of the plan, estimated projections of future earnings and expenditures, including plan payments are depicted in the following table. Aberdeen Acres has experienced an annual growth rate of 200% per year since the Debtor assumed control over operations in November of 2008. In 2010 this growth rate continued to hold. For the purpose of the Plan, Debtor is assuming an annual growth rate of ten percent (10%) which is extremely conservative and sustainable. A significant number of energy efficiency improvements were completed in 2010, thus operating expenses should remain relatively stable even in the face of rising energy costs.

## Aberdeen Acres Pet Care Center
## Pro-Forma Cash Flow Statement

|  | Fiscal 2011 | Fiscal 2012 | Fiscal 2013 | Fiscal 2014 |
|---|---|---|---|---|
| Beginning Cash | $   14,457.96 | $139,261.94 | $ 299,508.37 | $    499,344.48 |
| Cash Sales | $ 454,922.50 | $500,414.75 | $ 550,456.23 | 605,501.85 |
| **Total Cash** | $ 469,380.46 | $639,676.69 | $ 849,964.59 | $ 1,104,846.33 |
| **Expenses:** | | | | |
| Mortgage Payment | $   78,873.48 | $ 78,873.48 | $   78,873.48 | $   78,873.48 |
| Advertising & Promotion | $ 23,456.00 | $ 24,394.24 | $   25,370.01 | $   26,384.81 |
| Bank Service Charges | $   9,567.00 | $   9,949.68 | $   10,347.67 | $   10,761.57 |
| Casual Labor | $   81,234.00 | $ 84,483.36 | $   87,862.69 | $   91,377.20 |
| Insurance Expense | $   6,512.00 | $   6,772.48 | $     7,043.38 | $     7,325.11 |
| Health Insurance | $   4,698.00 | $   4,885.92 | $     5,081.36 | $     5,284.61 |
| Janitorial Supplies | $   1,657.00 | $   1,723.28 | $     1,792.21 | $     1,863.90 |
| Kennel Supplies | $   23,451.00 | $ 24,389.04 | $   25,364.60 | $   26,379.19 |
| Meals & Entertainment | 2,365.00 | $   2,459.60 | 2,557.98 | $     2,660.30 |
| Office Supplies | S   5,762.00 | $   5,992.48 | $   6,232.18 | $     6,481.47 |
| Professional Fees | $   7,980.00 | $   8,299.20 | $   8,631.17 | 5   8,976.41 |
| Refunds | $       250.00 | $     260.00 | 270.40 | 281.22 |
| Reimbursements | $         20.00 | $       20.80 | 21.63 | 22.50 |
| Repairs and Maintenance | $   32,512.00 | $ 33,812.48 | $   35,164.98 | $   36,571.58 |
| Telephone Expense | $   3,125.00 | $   3,250.00 | $   3,380.00 | $     3,515.20 |
| Utilities | $   9,761.00 | $ 10,151.44 | 10,557.50 | 10,979.80 |
| Chap 11 Quarterly Fees | $   2,275.00 | $   2,366.00 | $   2,460.64 | $     2,559.07 |
| Dues & Subscriptions | $   1,587.00 | $   1,650.48 | $   1,716.50 | $     1,785.16 |
| Misc. Expenses | $       121.04 | $     125.88 | $   130.92 | 136.15 |
| Postage & Delivery | $       354.00 | $     368.16 | $   382.89 | 398.20 |
| Travel Expense | $   11,876.00 | $ 12,351.04 | $   12,845.08 | $   13,358.88 |
| Computer/Internet | $   1,765.00 | 1,835.60 | $   1,909.02 | $     1,985.38 |
| Auto Insurance Expenses | $   1,287.00 | $   1,338.48 | $   1,392.02 | $     1,447.70 |
| Property Taxes | 5   2,454.00 | $   2,552.16 | $   2,654.25 | $     2,760.42 |
| Payroll Taxes | $   2,654.00 | $   2,760.16 | $   2,870.57 | $     2,985.39 |
| Unemployment Taxes | $       921.00 | 957.84 | $   996.15 | $     1,036.00 |
| Equipment Purchase | $       376.00 | $     391.04 | $   406.68 | 422.95 |
| Printing & Reproduction | $       640.00 | $     665.60 | $   692.22 | 719.91 |
| Income Taxes | 5   7,698.00 | $   8,005.92 | $   8,326.16 | $     8,659.20 |
| Payroll Expenses | $   4,872.00 | $   5,066.88 | $   5,269.56 | $     5,480.34 |
| License & Permits | 5       15.00 | $       15.60 | 16.22 | 16.87 |
| | | | | |
| **Total Expenses:** | $ 330,118.52 | $340,168.32 | $ 350,620.12 | $    361,489.98 |
| | | | | |
| **Ending Cash:** | $ 139,261.94 | $299,508.37 | $ 499,344.48 | $    743,356.34 |

The Debtor anticipates and projects that his income will be equal to, or greater than, it has been while this case has been pending, as shown in his respective Monthly U.S. Trustee Reports which have been timely filed with the Bankruptcy Court.

X.                          **LIQUIDATION ANALYSIS**

There are no impaired class of claims in this matter and no holders of impaired claims. For both Brown Bark and Pauline A. Ebersole, the Plan provides for 100% repayment of all claims with interest. Accordingly, it satisfies the liquidation analysis requirements of the Bankruptcy Code and provides adequate protection to all of the Debtor's Creditors.

The Debtor will request the court to establish a bar date to file claims. The claims that have been filed against the Debtor are:

| | | |
|---|---|---|
| Secured Claims: | Brown Bark I, L.P. | $270,000.00 |
| Secured Claims: | Pauline Ebersole | $ 77,000.00 |

XI.                          **LITIGATION**

The Motion for Relief from Stay filed by Brown Bark I, L.P. has been resolved and the Debtor has complied with the Court's Decision and Order in these matters by wiring the required funds to Brown Bark I, L.P. The Debtor's objections to the claims of the Internal Revenue Service (Claim 1-2), Karen L. Ebersole (Claim 2-2) and PRA Receivables Management, LLC. (Claim 4-1), have all been resolved with these obligations having been paid in full. There continues to be post petition litigation in the State Court between the Debtor and his ex-wife regarding the Amended Judgment of Absolute Divorce filed in the State Court on April 9, 2009.  There is also a post petition

adverse proceeding filed by the Debtor against his ex-wife, her attorneys, Mary Ann Day and Richard C. Maxwell, but those proceedings simply attempt to recover employee withholding taxes embezzled by his ex-wife from Aberdeen Acres employees in 2007 and 2008 and to determine the validity of the State Court's April 9, 2009 Amended Judgment Order.

XII.     **UNSECURED CREDITORS' COMMITTEE**

No unsecured creditors' committee has been formed in this case.

## CONCLUSION

The Debtor believes the Plan he has proposed will afford fair and equitable treatment to all interested parties in a manner that is least disruptive to the operations of the Debtor and he respectfully requests the acceptance of this Plan.

Respectfully Submitted,

DATED: JULY 29, 2011

Russell L. Ebersole
667 Walters Mill Lane
Stephenson, Virginia 22656

## **CERTIFICATE OF SERVICE**

I hereby certify that I have this _____ day of _____,
_____, I mailed via first class, prepaid, U.S. Mail, a true copy of the foregoing
Disclosure Statement, Plan of Reorganization and Schedule for Hearing on same to all
claimants listed below, or to their counsel of record and to the United States Tustee in
this case.


Margaret K. Garber
Office of the United States Trustee
210 First Street, Suite 505
Roanoke, Virginia  24011


Mr. Steven L. Higgs, Esquire
Counsel for Brown Bark I, L.P.
9 Franklin Road Southwest
Roanoke, Virginia  24011


Pauline A. Ebersole
355 Sunbrook
Hagerstown, MD 21740


_____
Russell Lee Ebersole, Pro Se
July 29, 2011

July 29, 2011

Mrs. Marsha Jarrels
Deputy Clerk
United States Bankruptcy Court
for the Western District of Virginia
Harrisonburg, Division
116 Main St., Room 223
Harrisonburg, VA 22802

Re:    Filing of Disclosure Statement and Request for Hearing Date for the Court's
       Approval.

In Ref: In re: Russell Lee Ebersole, (Case No. 09-51561).

Dear Mrs. Jarrels:

      Please find attached my Disclosure Statement for approval by the Court. I
respectfully request a hearing date be assigned so that I can notify all creditors and
forward a copy of the disclosure statement, plan for reorganization and notice of the
hearing to them.

      I have attached two copies of this document along with a self addressed, return
stamped envelope. As soon as I receive the copy signed by the Court, I will execute the
certificate of service and then send proof of same to you for the docket.

      If you have any questions, please feel free to contact me directly at (540) 667-
7809 or on my cellular phone (240) 329-2425.

Sincerely,

Russell L. Ebersole, Pro Se
667 Walters Mill Lane
Stephenson, V 22656

cc:    Mrs. Margaret Garber
       Office of the United States Trustee
       210 First Street, Suite 505
       Roanoke, Virginia  24011



FILED-HARRISONBURG, VA
U.S. BANKRUPTCY COURT

AUG - 1 2011

By
    DEPUTY CLERK